JL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherlock Felix Guevara Serrano,<br><br>Petitioner,<br><br>v.<br><br>Pamela Bondi, et al.,<br><br>Respondents. | No.  CV-26-00110-PHX-DJH (CDB)<br><br>**ORDER** |

Petitioner filed this action under 28 U.S.C. § 2241 challenging his immigration detention (Doc. 1). Petitioner alleged he was released from immigration detention on December 20, 2022 on an Order of Release on Recognizance. (*Id.* ¶ 31.) Petitioner further alleged that although he complied with all conditions of his release, he was rearrested and detained on December 16, 2025 without notice or opportunity to respond. (*Id.* ¶¶ 31, 34.) The Court directed Respondents to answer the Petition[1] and permitted Petitioner to file a reply. (Doc. 8.) Upon review of the briefing, the Court will grant the Petition and direct Petitioner's immediate release from custody.

**I.  Background**

Petitioner is a native and citizen of Nicaragua. (Doc. 1 ¶ 30.) He entered the United States without inspection on December 18, 2022 and was apprehended the same day. (*Id.*

---

[1] Respondents submitted no documentary evidence with their Response. although the Court's Order directing Respondents to answer the Petition instructed them to support their response with documentary evidence including, if applicable, affidavits signed under penalty of perjury by individuals with personal knowledge of the factual statements made therein.

¶ 31.) On December 20, 2022, Petitioner was paroled into the United States under an Order of Release on Recognizance. (*Id.*) Petitioner complied with all the conditions of his Order of Release on Recognizance. (*Id.* ¶¶ 4, 31.) Immigration and Customs Enforcement officers arrested Petitioner on December 18, 2025, when he reported for a check-in under his Order of Release on Recognizance. (*Id.* ¶ 34.)

## II.     Discussion

Petitioner asserts that the Department of Homeland Security and the Executive Office for Immigration Review have treated him as "seeking admission at the border," although he was paroled into the United States when he sought admission in 2022, and have improperly concluded that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (*Id.* ¶¶ 9-10.) Petitioner contends his ongoing detention violates his right to substantive due process under the Fifth Amendment, and his re-detention without a pre-deprivation hearing violated his right to due process under the Fifth Amendment. (*Id.* ¶¶ 53-54, 58.) Petitioner further asserts his arrest violated his right to be free from unreasonable seizure under the Fourth Amendment. (*Id.* at 18.)

Respondents assert that "Petitioner was apprehended shortly after entering without inspection," and he "thus 'cannot be said to have effected an entry.'" (Doc. 12 at 5.) Respondents contend that Petitioner "must be treated 'like an alien detained after arriving at a port of entry' **regardless of whether he arrived at a port of entry or not**," and his detention without bond is statutorily required. (*Id.*) (emphasis added). Respondents also argue that "Petitioner's claim to procedural due process rights must fail because he is considered legally not to have entered the United States, even though he is physically present here," and he is "entitled only to those procedures granted him by statute." (*Id.* at 6.) Respondents further assert that Petitioner's substantive due process claim "has no grounding in law." (*Id.* at 7.) Rather, Respondents contend, ""[t]he [Immigration and Nationality Act] does not create any liberty interest in temporary parole that is protected by the Fifth Amendment. Rather, the statute makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney

General." (*Id.*) (quoting *Wong v. United States*, 373 F.3d 952, 968 (9th Cir. 2004)), *overruled in part on other grounds by Wilkie v. Robbins*, 551 U.S 537 (2007)).

### 1. Entry Fiction Doctrine

The district court in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-10676-BEM, 2026 WL 521557 (D. Mass. Feb. 25, 2026), recently explained why the "entry fiction" urged by Respondents does not foreclose Petitioner's due process claim as to his present detention. According to the "entry-fiction doctrine," "aliens who arrive at ports of entry . . . are treated for due process purposes as if stopped at the border and thus ha[ve] only those rights regarding admission that Congress has provided by statute." *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020) (internal quotation marks omitted)). The district court in *D.V.D.* noted that in cases that provide an exception to the otherwise "geographic" scope of the Due Process Clause, "the due process rights impacted are only those 'regarding admission.'" *Id.* at *30 (quoting *Thuraissigiam*, 591 U.S. at 140). "This distinction arises near the very inception of the entry-fiction case law." *Id.* In *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court "contrasted the case of an immigrant who could not challenge his immigration officer's 'exclusive authority to determine whether a particular alien seeking admission into this country' was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor." *Id.* (quoting *Wong Wing*, 163 U.S. at 232-33, 235-38). The district court noted that although *Wong Wing* "presented the particularly egregious circumstance of an 'infamous punishment,'" the Supreme Court expressed its holding in terms of the broader protections afforded by the Due Process Clause:

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 158 U.S. at 238).  The court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." *Id.* (citing *Thuraissigiam*, 591 U.S. at 140).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases . . . as it may see fit.'" *Id.* (citation omitted).  "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification." *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)). "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's *admissibility*." *Id.* (emphasis in original).  Accordingly, where an immigration detainee challenges neither his order of removal nor any of the processes that produced those orders, his claims "do not implicate, nor even "relate[ ] to," the issue of [his] admissibility." *See id.* at *31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)).  Petitioner is a "'person[]' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives him of his liberty interests.  *Id.* (citations omitted).

Indeed, recent cases confirm an immigration detainee released on parole retains a liberty interest in his release and that "liberty interest [does] not expire along with his parole." *Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted . . . . That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a [sic] individualized bond hearing prior to re-detaining the parolee."); *Mody v. Warden*, No. 25-cv-03400-FMO, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained

following expiration of his § 1182 parole); *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *5 (N.D. Cal. Dec. 18, 2025) ("[T]he government's decision to release an individual after having detained him creates 'an implicit promise' that he will be re-detained only if he violates the conditions of his release. Such conditional release is valuable and must be seen as within the protection of the [Due Process Clause].'" *Id.* at 482 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (internal citation omitted)); *Ramirez v. Wamsley*, No. 2:25-cv-01723-KKE-TLF, 2025 WL 3288295 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration, stating petitioner's "interest in his freedom is constitutionally protected" and that "the Government exercises discretion in determining whether to grant parole or extend it upon its expiration does not eliminate the protections afforded to Petitioner's liberty interest.")

### 2. *Mathews* factors

Respondents also do not address the three-pronged test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). *Mathews* explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether procedural protections satisfy the Due Process Clause, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

As to the first factor, "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Hernandez v. Sessions*, 872 F.3d 976, 994

(9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

As to the second factor, Petitioner asserts that he complied with all the conditions of his Order of Release on Recognizance, and Respondents have produced no contrary evidence. The Court concludes there is a grave risk of erroneous deprivation if unspecified violations can justify the re-detention of individuals without a neutral decisionmaker evaluating whether re-detention is warranted.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). In addition, here, Respondents' interest is even lower because Petitioner was previously released ***after*** immigration officials determined he was not a flight risk or danger to the community. *See Pinchi v. Noem*, No. 25cv05632-RMI, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025).

The Court therefore finds that the *Mathews* factors weigh in favor of determining Petitioner was entitled to a hearing before he was re-detained. *See J.E.H.G. v. Chesnut*, 1:25-CV-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."). "The only potential injury the government faces is a short delay in detaining [Petitioner] if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that [the] detention is necessary to prevent danger to the community or flight." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037-38 (N.D. Cal. 2025). For all these reasons, the Petition will be granted, and Petitioner will be ordered released from custody immediately.

1    **IT IS THEREFORE ORDERED** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to his due process claim in Count One.  The remainder of the Petition is denied as moot.

**IT IS FURTHER ORDERED** Respondents must **immediately release** Petitioner from custody under the same conditions that existed before his re-detention.

**IT IS FURTHER ORDERED** Respondents must provide a notice of compliance within two business days of Petitioner's release.

**IT IS FINALLY ORDERED** any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 7th day of March, 2026.

Honorable Diane J. Humetewa
United States District Judge